BEFORE THE UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: GRANULATED SUGAR ANTITRUST LITIGATION | MDL No. |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS KPH AND REDNER'S MOTION TO TRANSFER AND CENTRALIZE RELATED ACTIONS FOR CONSOLIDATED OR COORDINATED PRETRIAL PROCEEDINGS**

Direct purchaser plaintiffs KPH Healthcare Services, Inc.[1] and Redner's Markets, Inc.[2] ("Movants") jointly submit this memorandum of law in support of their Motion to Transfer and Centralize Related Actions for Consolidated or Coordinated Pretrial Proceedings. To date, three related cases have been filed in the Southern District of New York, two by direct purchasers of granulated sugar and one by a consumer indirect purchaser and two cases have been filed in the District of Minnesota by indirect purchasers, each alleging that Defendants,[3] including the largest sellers of sugar in the United States, conspired to artificially inflate the price of granulated sugar sold in the United States in violation of federal and state antitrust laws. Transfer to and centralization of the related actions in the Southern District of New York—where the first cases were filed, most of the cases are pending, and which has

---

[1] Plaintiff in *KPH Healthcare Services, Inc. v. ASR Group Int'l, Inc., et al*, Case No. 1:24-cv-01941 (S.D.N.Y.).

[2] Plaintiff in *Redner's Markets, Inc. v. ASR Group Int'l, Inc., et al*, Case No. 1:24-cv-01968 (S.D.N.Y.).

[3] Defendants named in Movants' actions include, ASR Group International, Inc. ("ASR Group"), American Sugar Refining, Inc. ("ASR"), Domino Foods, Inc. ("Domino Foods"), Michigan Sugar Company ("Michigan Sugar"), United Sugar Producers & Refiners f/k/a United Sugars Corporation ("United Sugars"), Commodity Information, Inc. ("Commodity"), and Richard Wistisen.

1

extensive experience with multidistrict antitrust litigation —will advance the efficient resolution of this litigation and serve the convenience of the parties and witnesses.

## FACTUAL AND PROCEDURAL BACKGROUND

This litigation concerns the market for granulated sugar sold in the United States. ¶ 1.[4] The granulated sugar market in the United States was valued at $13.2 billion in 2023 and is dominated by a few entities: Defendants ASR Group, ASR, and Domino Foods; United Sugars; and Michigan Sugar collectively control a significant share of the market. ¶¶ 24, 25. Defendants sell granulated sugar directly to various customers in the United States, including food and beverage manufacturers, retailers, food service companies, and distributors. ¶ 29. The complaint alleges that the Defendants conspired to restrain trade through an agreement or understanding to artificially inflate and maintain the prices of granulated sugar at supracompetitive levels across the United States. This scheme began at least as early as January 1, 2019, and has persisted, impacting purchasers by forcing them to pay inflated prices for granulated sugar. ¶ 2. Despite the stable supply of sugar, prices have seen significant increases, not justified by changes in production costs or market dynamics but rather by the Defendants' concerted actions to manipulate the market. The anticompetitive conduct is alleged to have artificially raised, fixed, or maintained granulated sugar prices at supracompetitive levels to the detriment of granulated sugar purchasers in violation of federal antitrust laws.

Beginning on March 14, 2024, at least five class action complaints have been filed regarding the alleged conspiracy to fix the prices of granulated sugar in the United States:

---

[4] All "¶" references are to paragraphs in the Complaint filed in the *KPH* action. Case No. 1:24-cv-01941, Dkt. 1 (S.D.N.Y.). The allegations in the *Redner's* and all the other cases are nearly identical.

- Three cases in the Southern District of New York currently pending before or assigned by the clerk to the Hon. Victor Marrero consisting of:
  - **Two direct purchaser actions:** *KPH Healthcare Services, Inc. v. ASR Group Int'l, Inc., et al.*, No. 1:24-cv-01941 (Mar. 14, 2024); *Redner's Markets, Inc. v. ASR Group Int'l, Inc., et al.*, No. 1:24-cv-01968 (Mar. 15, 2024).
  - **One indirect purchaser action:** *Fowler, et al. v. ASR Group Int'l, Inc., et al.*, No. 1:24-cv-01972 (Mar. 15, 2024).
- **Two indirect purchaser actions** in the District of Minnesota, *WNT, LLC, et al. v. United Sugar Producers & Refiners Cooperative, et al.*, No: 0:24-cv-00959 (Mar. 18, 2024); *Morelos Bakery LLC v. United Sugar Producers & Refiners Cooperative et al*, No. 0:24-cv-00966 (Mar 19, 2024).

The Related Actions (*see* Schedule of Related Actions submitted herewith) involve overlapping Defendants and each alleges that Defendants conspired to raise, fix, maintain, or stabilize prices of granulated sugar sold in the United States in violation of federal and state antitrust and consumer protection laws. Each Related Action alleges Defendants colluded to raise, fix, maintain, or stabilize prices of granulated sugar by engaging in an unlawful agreement to share competitively sensitive, non-public information among themselves, thereby distorting the natural forces of competition. This information included critical data about current and future sugar prices, production capacities, sales volumes, and insights into supply and demand dynamics, which are inherently competitively sensitive and would typically be closely guarded by competitors in a free market. Each of the Related Actions seeks compensatory damages and injunctive relief on behalf of direct or indirect purchasers of granulated sugar in the United States

3

from January 1, 2019, until the present. The Related Actions are also in a similar procedural posture as all are in the very earliest stages of litigation and no dispositive motions have been filed and discovery has yet to commence.

## ARGUMENT

I. **CENTRALIZATION OF THE RELATED ACTIONS IS WARRANTED UNDER 28 U.S.C. § 1407**

"When civil actions involving one or more common questions of fact are pending in different districts," this Panel may transfer such actions "to any district for coordinated or consolidated pretrial proceedings," if transfer would serve "the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). Because these requirements are met here, the Panel should transfer the Related Actions to a single district for coordinated or consolidated pretrial proceedings.

A. **The Related Actions Involve Common Questions of Fact**

For purposes of Section 1407, common questions of fact exist where multiple actions assert similar "core factual allegations" and "can be expected to focus on a significant number of common events, defendants, and/or witnesses." *In re Unumprovident Corp. Sec., Derivative & "ERISA" Litig.*, 280 F. Supp. 2d 1377, 1379 (J.P.M.L. 2003).

The Related Actions share one or more common questions of fact and satisfy the requirements of Section 1407(a) because they involve common defendants and overlapping conduct. Further, the Panel routinely finds that centralization is appropriate for cases involving alleged violations of antitrust laws. *See, e.g., In re Qualcomm Antitrust Litig.*, 273 F. Supp. 3d 1373, 1375 (J.P.M.L. 2017) ("Plaintiffs in all the actions listed on Schedule A assert similar claims for violations of federal and state antitrust and consumer protection laws."); *In re Visa/Mastercard Antitrust Litig.*, 295 F. Supp. 2d 1379, 1380 (J.P.M.L. 2003)

4

("All six actions share factual questions relating to allegations that Visa and MasterCard's 'Honor All Cards' policy violates the Sherman Antitrust Act."); *In re Polyester Staple Antitrust Litig.*, 259 F. Supp. 2d 1376, 1377 (J.P.M.L. 2003) (cases arising out of alleged price fixing shared common factual questions); *In re Parcel Tanker Shipping Servs. Antitrust Litig.*, 296 F. Supp. 2d 1370, 1371 (J.P.M.L. 2003) ("All actions share factual questions relating to the existence, scope and effect of an alleged conspiracy to fix the price of international shipments of liquid chemicals in the United States.").

Each Related Action is also brought on behalf of a nationwide class and asserts antitrust claims under federal or federal and state antitrust and consumer protection laws. *See In re Cotton Yarn Antitrust Litig.*, 336 F. Supp. 2d 1383, 1384 (J.P.M.L. 2004) ("All actions share factual questions relating to the existence, scope and effect of an alleged conspiracy to fix the price of cotton yarn in the United States and/or to allocate the U.S. cotton yarn market and customers."); *In re Domestic Airline Travel Antitrust Litig.*, 140 F. Supp. 3d 1344, 1345 (J.P.M.L. 2015) ("All of the actions assert overlapping putative nationwide classes of direct purchasers of domestic airfare, and all the actions assert antitrust violations of Section 1 of the Sherman Act."); *In re K-Dur Antitrust Litig.*, 176 F. Supp. 2d 1377, 1378 (J.P.M.L. 2001) (similar).

The Panel likewise frequently centralizes direct and indirect purchaser actions together. *See, e.g.*, *In re: Lidoderm Antitrust Litig.*, 11 F. Supp. 3d 1344, 1345 (J.P.M.L. 2014) ("All of the actions are putative nationwide class actions on behalf of either direct or indirect purchasers."); *In re Capacitors Antitrust Litig. (No. III)*, 285 F. Supp. 3d 1353, 1355 (J.P.M.L. 2017). While the indirect purchaser plaintiffs in the Related Actions bring claims for violations of state antitrust and consumer protection laws—claims which Movants have not brought—the Panel has "often .

. . held that the assertion of different legal claims or additional facts is not significant where, as here, the actions arise from a common factual core" and that transferee judges are more than capable of applying the laws of multiple states. *In re Insulin Pricing Litig.*, No. MDL 3080, 2023 WL 5065090, at *2 (J.P.M.L. Aug. 3, 2023).

   **B.**  **Centralization Would Serve the Convenience of Parties and Witnesses and Promote the Just and Efficient Conduct of The Related Actions**

  Because the Related Actions' factual allegations and legal claims largely overlap, transfer would serve "the convenience of parties and witnesses and . . . promote the just and efficient conduct" of the Related Actions. 28 U.S.C. § 1407(a). There are already three actions pending in this district. *See e.g.*, *In re Delta Dental Antitrust Litig.*, 433 F. Supp. 3d 1358 (J.P.M.L. 2020) (centralizing fourteen actions pending in three districts in the district where "half of the related actions…are pending"); *In re Ranbaxy Generic Drug Application Antitrust Litig.*, 355 F. Supp. 3d 1382 (J.P.M.L. 2019) (centralizing four actions pending in three districts); *In re Diisocyanates Antitrust Litig.*, 341 F. Supp. 3d 1376, 1377 (J.P.M.L. 2018) (centralizing twelve actions filed in three districts involving antitrust allegations where "discovery is likely to be international in scope"). Given the likelihood that additional cases will be filed, centralization under section 1407 now would be the most efficient means of proceeding. *See, e.g., In re: Edward H. Okun I.R.S. |1031 Tax Deferred Exch. Litig.*, 609 F. Supp. 2d 1380, 1381 (J.P.M.L. 2009) ("[D]enial of either of Wachovia's transfer motions could engender delay, as the Panel may be asked to revisit the question of Section 1407 centralization. Centralizing these actions now under Section 1407 should streamline resolution of this litigation to the overall benefit of the parties and the judiciary."); *In re: AndroGel Prod. Liab. Litig.*, 24 F. Supp. 3d 1378, 1379 (J.P.M.L. 2014) (rejecting alternatives to centralization because they "would delay the resolution of the common core issues in this litigation").

Centralization is also appropriate because the plaintiffs in the Related Actions now pending in two different districts with distinct groups of Plaintiffs' counsel will undoubtedly pursue substantially similar testimony, documents, and other evidence from Defendants. Centralizing the Related Actions will have "the salutary effect of placing all actions in this docket before a single judge who can formulate a pretrial program that ensures that pretrial proceedings will be conducted in a manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties." *In re Cook Med., Inc., Pelvic Repair Sys. Prod. Liab. Litig.*, 949 F. Supp. 2d 1373, 1375 (J.P.M.L. 2013); *In re Auto Body Shop Antitrust Litig.*, 37 F. Supp. 3d 1388, 1390 (J.P.M.L. 2014) ("Transfer under Section 1407 will offer the benefit of placing all related actions before a single judge who can structure pretrial proceedings to accommodate all parties' legitimate discovery needs while ensuring that common witnesses are not subjected to duplicative discovery demands").

Moreover, because the Related Actions have many common questions of fact and law, they will also have many overlapping pretrial issues, including the adequacy of the claims and allegations. In addition, because each Related Action is a class action, centralization will eliminate the possibility of inconsistent rulings on class certification from courts in multiple districts. *See, e.g., In re: Zimmer Durom Hip Cup Prod. Liab. Litig.*, 717 F. Supp. 2d 1376, 1377 (J.P.M.L. 2010) ("Centralization under Section 1407 will eliminate duplicative discovery, prevent inconsistent pretrial rulings on discovery and other issues, and conserve the resources of the parties, their counsel and the judiciary.").

For these reasons, the Panel should centralize the Related Actions in the interests of justice and efficiency.

II. **THE PANEL SHOULD TRANSFER THE RELATED ACTIONS TO THE SOUTHERN DISTRICT OF NEW YORK**

In determining the appropriate transferee district, the Panel considers a variety of factors, including: (1) whether the district "offers a forum that is both convenient and accessible for the parties and witnesses"; (2) the location of "relevant witnesses and evidence"; (3) the positions of the parties; and (4) the experience of the transferee judge and district in navigating "the nuances of complex and multidistrict litigation." *In re: Aggrenox Antitrust Litig.*, 11 F. Supp. 3d 1342, 1343 (J.P.M.L. 2014). Movants submit that the Southern District of New York is well-suited for these cases. The majority of the cases— three out of five—have been filed in this district, including all of the earliest-filed cases. *See In re Cotton Yarn*, 336 F.Supp.2d at 1384 (selecting district where "six of the seven actions in this litigation are currently pending"); *In re Treasury Sec. Auction Antitrust Litig.*, 148 F. Supp. 3d 1360, 1362 (J.P.M.L. 2015) (selecting district in part because "the vast majority of actions" were pending there); *In re Microcrystalline Cellulose Antitrust Litig.*, 149 F. Supp. 2d 935, 936 (J.P.M.L. 2001) (same); *see also In re Sensipar (Cinacalcet Hydrochloride Tablets) Antitrust Litig.*, 412 F. Supp. 3d 1344, 1346 (J.P.M.L. 2019) (selecting district in part because "[t]he three earliest-filed actions are pending there…").

In addition, because this litigation involves an alleged sprawling conspiracy spanning the United States, the Panel should select a district that is "convenient and accessible for the parties and witnesses." *In re: Kind LLC (All Nat.) Litig.*, 118 F. Supp. 3d 1380, 1381 (J.P.M.L. 2015) (transferring to the Southern District of New York); *In re: Standard & Poor's Rating Agency Litig.*, 949 F. Supp. 2d 1360, 1362 (J.P.M.L. 2013) (transferring cases to Southern District of New York and noting it "provides a convenient and accessible forum"). Notably, Plaintiff KPH Healthcare Services, Inc. is incorporated under the laws of New York and its principal place of business is in New York. *See In re Generali*

*COVID-19 Travel Ins. Litig.,* 509 F. Supp. 3d 1365 (J.P.M.L. 2020) ("We are persuaded that the Southern District of New York, where three cases are pending, is an appropriate transferee district. [A party] is headquartered and maintains its principal place of business in S.D. New York."). Defendant Domino Foods has offices and a sugar refinery within the district (¶ 12).[5] Additionally, the Southern District of New York is serviced by three major airports and a multitude of rail, light rail, and rapid transit systems. New York also offers an abundance of hotels, taxis, and car rental agencies. These options make the Southern District of New York particularly accessible for all parties in the Related Actions, as well as their counsel and witnesses.

Judge Victor Marrero is currently presiding over Movants' actions, and on March 19, 2024 the *Fowler* actions was reassigned to him as related.[6] Judge Marrero is a capable jurist who has presided over MDLs previously, including *In re Municipal Derivatives Antitrust Litigation*, MDL No. 1950, which, like this case, was a complex antitrust class action based on allegations of price fixing. *See In re: Mun. Derivatives Antitrust Litig.*, 560 F. Supp. 2d 1386, 1387-88 (J.P.M.L. 2008) (transferring cases to Judge Marrero). Judge Marrero is also currently presiding over *In re European Government Bonds Antitrust Litigation*, No. 19-cv-02601 (S.D.N.Y.), another class action case arising under federal antitrust law. Accordingly, Judge Marrero is well-suited to preside over the Related Actions here.

Finally, the Southern District of New York possesses substantial resources and has a track record of efficiency, routinely manages multidistrict antitrust litigation,[7] and has many

---

[5] Other defendants are based all across the United States, including in Florida, Michigan, Minnesota, and Utah.

[6] *Fowler et al v. ASR Group International, Inc.*, et al, Docket No. 1:24-cv-01972 (S.D.N.Y. Mar 19, 2024).

[7] *See, e.g.*, *In re Digital Advert. Antitrust Litig.*, 555 F. Supp. 3d 1372, 1379 (J.P.M.L. 2021) (centralizing in the Southern District of New York); *In re Inclusive Access Course Materials Antitrust Litig.*, 482 F. Supp. 3d 1358, 1360 (J.P.M.L. 2020) (same); *In re Int. Rate Swaps Antitrust Litig.*, 190 F. Supp. 3d 1364, 1366 (J.P.M.L. 2016) (same); *In re: Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 24 F. Supp. 3d 1361, 1363 (J.P.M.L. 2014)

experienced jurists who can manage this complex multi-party litigation. *See Kind,* 118 F. Supp. 3d at 1381 ("[T]he Southern District of New York. . . has the necessary judicial resources and expertise to efficiently manage this litigation."); *Aggrenox*, 11 F. Supp. 3d at 1343 (considering experience of district); *In re Adelphia Commc'ns Corp. Sec. &Derivative Litig. (No. II)*, 273 F. Supp. 2d 1353, 1355 (J.P.M.L. 2003) (concluding that the Southern District of New York "possesses the necessary resources to be able to devote the substantial time and effort to pretrial matters that this complex docket is likely to require.").

The Southern District of New York is therefore the most suitable transferee district and Judge Marrero, or another judge from the district, will help steer this litigation on a prudent course.

## CONCLUSION

For the foregoing reasons, Movants respectfully request that the Panel transfer and centralize the Related Actions before the Hon. Victor Marrero of the Southern District of New York or another judge in the district.

Dated: March 19, 2024                    Respectfully submitted,

Michael L. Roberts
Erich P. Schork
Sarah E. DeLoach
Christopher B. Sanchez
Morgan T. Hunt
**ROBERTS LAW FIRM US, P.C.**
1920 McKinney Avenue, Suite 700
Dallas, Texas 75201
(501) 821-5575
mikeroberts@robertslawfirm.us

---

(same); *In re: London Silver Fixing, Ltd., Antitrust Litig.*, 52 F. Supp. 3d 1381 (J.P.M.L. 2014) (same).

10

erichschork@robertslawfirm.us
sarahdeloach@robertslawfirm.us
chrissanchez@robertslawfirm.us
morganhunt@robertslawfirm.us

Scott Martin
**HAUSFELD LLP**
33 Whitehall Street
New York, New York 10004
(646) 357-1100
smartin@hausfeld.com

Michael Hausfeld
**HAUSFELD LLP**
888 16th Street N.W.
Washington, D.C. 20006
(202) 540-7200
mhausfeld@hausfeld.com

Michael P. Lehmann
**HAUSFELD LLP**
600 Montgomery Street, Suite 3200
San Francisco, California 94111
(415) 633-1908
mlehmann@hausfeld.com

Joseph C. Kohn
William E. Hoese
Douglas A. Abrahams
**KOHN, SWIFT & GRAF, P.C.**
1600 Market Street, Suite 2500
Philadelphia, Pennsylvania 19103
(215) 238-1700
jkohn@kohnswift.com
whoese@kohnswift.com
dabrahams@kohnswift.com

Gregory S. Asciolla
Jonathan S. Crevier
**DICELLO LEVITT LLP**
485 Lexington Avenue, Suite 1001
New York, New York 10017

11

(646) 933-1000
gasciolla@dicellolevitt.com
jcrevier@dicellolevitt.com

Joshua H. Grabar
**GRABAR LAW OFFICE**
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, Pennsylvania 19103
(267) 507-6085
jgrabar@grabarlaw.com

Marc H. Edelson
**EDELSON LECHTZIN LLP**
411 S. State Street, Suite N300
Newtown, Pennsylvania 18940
(215) 867-2399
medelson@edelson-law.com

*Attorneys for Movants*