BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: GRANULATED SUGAR ANTITRUST LITIGATION | MDL No. 3110 |

**MINNESOTA PLAINTIFFS' RESPONSE TO MOTION FOR
TRANSFER OF RELATED ACTIONS FOR
CONSOLIDATED OR COORDINATED PRETRIAL PROCEEDINGS**

Pursuant to 28 U.S.C. § 1407 and Rule 6.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation (the "Panel"), District of Minnesota Plaintiffs WNT, LLC, WNT Farmington, LLC, Morelos Bakery LLC, BW-SS, Inc., Boca Botana's Inc, King Kullen Grocery Co., Inc., Raleigh Golden, Piala LLC, and The Union Public House, LLC (collectively, the "Minnesota Plaintiffs") respectfully submit this Memorandum of Law in response to Plaintiffs KPH Healthcare Services, Inc. ("KPH") and Redner's Markets, Inc.'s ("Redner") Motion to Transfer Related Actions for Consolidated or Coordinated Pretrial Proceedings (the "Motion to Transfer"). The Minnesota Plaintiffs agree that transfer of the related actions for coordinated or consolidated pretrial proceedings is appropriate pursuant to 28 U.S.C. § 1407. However, the Minnesota Plaintiffs submit that the District of Minnesota is the most appropriate forum.

I. **PRELIMINARY STATEMENT**

As of this filing, seventeen related antitrust class action complaints based on similar antitrust claims against producers of Granulated Sugar[1] have been filed in three districts, the District of Minnesota, the Southern District of New York, and the Southern District of Florida (collectively, the "Actions"). Three actions filed in the Southern District of New York involve

---

[1] "Granulated Sugar" is ordinary, white, table sugar that is made from cane sugar or beet sugar that has undergone a refining process to extract the sucrose and create relatively large, uniform crystals.

the claims of direct purchaser plaintiffs.[2] Meanwhile, the vast majority of indirect purchasers of Granulated Sugar have filed ten class action complaints in the District of Minnesota alleging federal antitrust and various state antitrust and consumer protection claims.[3] All of the Actions allege that the largest producers and sellers of Granulated Sugar in the United States, American Sugar Refining, Inc. ("ASR"), ASR Group International, Inc. ("ASR Group"), Domino Foods, Inc. ("Domino"), United Sugar Producers & Refiners f/k/a United Sugars Corporation ("United"), Michigan Sugar Company ("Michigan Sugar"), Cargill Inc. ("Cargill"), Commodity Information, Inc. ("Commodity"), and Richard Wistisen (collectively, "Defendants"),[4] as well as unidentified co-conspirators, conspired to artificially inflate the price of Granulated Sugar, in violation of federal antitrust laws and various state antitrust and consumer protection laws. To implement their price-fixing conspiracy, Defendants exchanged detailed, competitively sensitive, non-public information about Granulated Sugar prices, capacity, sales volume, supply, and demand.

The Minnesota Plaintiffs agree with Plaintiffs KPH and Redner that centralization under 28 U.S.C. § 1407 is appropriate. The Actions involve largely identical factual allegations, overlapping Defendants, overlapping legal claims, and are brought on behalf of one of three classes of either direct, commercial indirect, or consumer indirect purchasers. Centralization would serve judicial and party economy, streamline the pre-trial process, and

---

[2] *See* Ex. A.  One consumer indirect purchaser complaint also has been filed in the Southern District of New York.

[3] *See* Ex. A. Nine commercial indirect purchaser actions and one consumer indirect purchaser action were filed in the District of Minnesota; one commercial indirect purchaser action and one consumer indirect purchaser action were filed in the Southern District of New York; two consumer indirect purchaser actions were filed in the Southern District of Florida.

[4] Only the following eleven actions include Cargill, Inc. as a Defendant: *WNT, LLC*; *Morelos Bakery*; *Up at 4*; *Quarterback Club*; *BW-SS*; *Boca Botana's*; *King Kullen*; *Raleigh Golden*; *Piala*; *Union Public House; and Humphreys.*

promote just, convenient, and efficient litigation.

The Minnesota Plaintiffs, however, disagree with Plaintiffs KPH and Redner as to the most appropriate transferee court and request centralization in the District of Minnesota. The District of Minnesota, located in the heartland of America's Granulated Sugar industry, is the ideal transferee forum for this case. Minnesota has the closest connection to the Granulated Sugar industry and to many of the Defendants in this case. The District of Minnesota is also centrally located, which will serve the convenience of the parties and witnesses in these nationwide class actions involving litigants located throughout the United States. Further, the District of Minnesota also has more favorable docket conditions, is significantly quicker to bring civil cases to trial, and has fewer MDLs than the Southern District of New York. Finally, the Honorable Jeffrey M. Bryan ("Judge Bryan") who is presiding over the Minnesota Actions is a highly capable jurist, with substantial antitrust expertise, who would guide this litigation on a prudent course.

For all these reasons, and as more fully discussed below, the Minnesota Plaintiffs respectfully request that the Panel transfer these Actions to the District of Minnesota for coordinated or consolidated pretrial proceedings.[5]

## II. ARGUMENT

### A. Transfer of the Actions to One Court for Coordination or Consolidation Is Appropriate Under 28 U.S.C. § 1407

The Minnesota Plaintiffs agree that transfer of the Actions to one court for coordination or consolidation is appropriate under 28 U.S.C. § 1407. There is no dispute that the Actions share common questions of fact and involve similar legal issues. Centralization will promote the just and efficient conduct of the litigation by eliminating duplicative discovery and by

---

[5] Minnesota Plaintiff Up at 4 Inc. filed its own Response to Plaintiffs KPH and Redner's Motion to Transfer, agreeing that centralization is proper, and Minnesota is the appropriate transferee jurisdiction. ECF No. 46.

2

avoiding the risk of inconsistent rulings on pretrial matters and dispositive motions. *In re Crop Prot. Prods. Loyalty Program Antitrust Litig.*, 655 F. Supp. 3d 1380, 1381 (J.P.M.L. 2023) (transferring antitrust actions for consolidated or coordinated pretrial proceedings in light of similarities in claims asserted, anticipated discovery and motion practice); *see also In re Ethicon Physiomesh Flexible Composite Hernia Mesh Prod. Liab. Litig.*, 254 F. Supp. 3d 1381, 1382 (J.P.M.L. 2017) ("Centralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings; and conserve the resources of the parties, their counsel, and the judiciary.").

### B. The District of Minnesota Is the Most Appropriate Forum for the Granulated Sugar Actions

In choosing a transferee forum, the Panel considers which judicial district is best suited to promote the purpose of 28 U.S.C. § 1407 in ensuring convenience of the parties and the just and efficient conduct of the litigation. For the reasons set forth herein, these factors favor transfer of the Actions to the District of Minnesota before Judge Bryan.

#### 1. The District of Minnesota Has Unique Ties to the Granulated Sugar Industry and a Strong Nexus to the Actions

The District of Minnesota has significant ties to the Granulated Sugar industry and the Defendants in this case. First, Defendant United is a Minnesota corporation with its principal place of business in Edina, Minnesota and Defendant Cargill is headquartered in Minnetonka, Minnesota. *See, e.g.*, *In re Apple*, Inc. 602 F.3d 909, 915 (8th Cir. 2010) (recognizing the place of defendants' headquarters is a significant factor for transferring actions); *In re Guidant Corp. Implantable Defibrillators Prod. Liability Litig.*, 398 F. Supp. 2d 1371, 1372 (J.P.M.L. 2005) (selecting District of Minnesota as a transferee district because, inter alia, key defendant facilities are located there); *In re Toyota Motor Corp. Unintended Acceleration Mktg. Sales Practices & Prods. Liab. Litig.*, 704 F. Supp. 2d 1379, 1382 (J.P.M.L. 2010) (choosing transferee district where defendant is located); *In re Equifax, Inc., Customer Data Sec. Breach*

*Litig.*, 289 F. Supp. 3d 1322, 1326 (J.P.M.L. 2017) (same). Second, Plaintiffs Morales Bakery, Up at 4, Quarterback Club, and Raleigh Golden are Minnesota residents who, along with 8 non-resident plaintiffs (including one from New York and one from Florida), have chosen to file their actions in the District of Minnesota. *See, e.g.*, *In re Nat'l Arbitration Forum Antitrust Litig.*, 682 F. Supp. 2d 1343, 1345–46 (J.P.M.L. 2010) (selecting the District of Minnesota, in part because seven of the ten actions were already pending in that district); *In re Total Body Formula Prods. Liab. Litig.*, 582 F. Supp. 2d 1381, 1382 (J.P.M.L. 2008) (finding that the Northern District of Alabama was an appropriate transfer district, given that fourteen of the twenty actions were pending there). Finally, the District of Minnesota has the greatest nexus to the litigation as millions of tons of sugar beets are grown, harvested, and then processed into Granulated Sugar in sugar factories located in Minnesota. Indeed, the U.S. Department of Agriculture's Economic Research Service has stated that "the largest and most dynamic region for sugar beet production is in or close to the Red River Valley of western Minnesota and eastern North Dakota[6]… the Red River region increased consistently through the 1990s and into the 2000s and has accounted for the majority of total planted U.S. sugar beet acreage."[7]

In contrast, the Southern District of New York only has tenuous ties to the Granulated Sugar industry and the Actions. No Defendant is headquartered or incorporated in New York. Only Defendant Domino has a processing facility in Yonkers, New York (Domino also has processing facilities in California, Louisiana, and Maryland). As of the date of this filing, only a single plaintiff resides in New York and chose to file a complaint there, as compared to four

---

[6] Plaintiff BW-SS, Inc., which filed its action in the District of Minnesota and supports centralization there, is located in North Dakota, which extends deeply into the Red River Valley.

[7] *See* https://mn.gov/deed/newscenter/publications/review/april-2019/sugar-manufacturing.jsp (quoting Background, United States Department of Agriculture Economic Research Service) (last visited 4/3/2024); *see also* https://www.nass.usda.gov/Charts_and_Maps/Crops_County/su-pr.php (last visited 4/3/2024) and AgMRC, Sugarbeet Profile (Feb. 2022), https://www.agmrc.org/commodities-products/grain-oilseeds/sugarbeet-profile (last visited 4/3/2024).

plaintiffs in the Actions who hail from Minnesota. The fact that Defendants generally conduct business within the state of New York is unpersuasive as they generally conduct business nationwide, including in Minnesota. As such, the Southern District of New York has no greater connection to issues and evidence in this nationwide litigation than any other district where a Defendant happens to process sugar.

For these reasons, the District of Minnesota is the geographic focal point of this litigation, and the Actions should be transferred there for consolidated or coordinated pretrial proceedings.

### 2. The District of Minnesota's Central Location and Proximity to Defendants Makes It the Most Geographically Convenient Location

The Panel also considers whether a transferee district "is a geographically convenient location[.]" *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 277 F. Supp. 2d 1373, 1374 (J.P.M.L. 2003). The District of Minnesota is a centrally located convenient forum for all parties, witnesses and their counsel, who are located across the country. Defendants are headquartered in a variety of states, including Minnesota (United and Cargill), Florida (ASR, ASR Group and Domino), Michigan (Michigan Sugar), and Utah (Commodity). Likewise, plaintiffs, witnesses and evidence are located across the country. The Minneapolis-Saint Paul International Airport ("MSP") is consistently ranked among North America's best and most efficient airports, connecting millions of passengers to the region each year.[8] There are direct flights from MSP to West Palm Beach and Miami, Florida, Detroit and Grand Rapids, Michigan, Salt Lake City, Utah, as well as to New York, Philadelphia, Chicago, and San

---

[8] *See* https://www.visitsaintpaul.com/plan-your-trip/getting-here/msp-airport/ (last visited 4/3/2024); Michelle Baran, The Best (and Worst) Airports in North America, According to Travelers, AFAR (Sept. 30, 2023), https://www.afar.com/magazine/these-north-american-airports-rank-best-and-worst-in-passenger-satisfaction (MSP is considered a top rated "mega airport," ranked second best in North America according to a recent J.D. Powers survey) (last visited 4/3/2024).

5

Francisco where a number of counsel are located.[9] Two federal courthouses in the district are located less than ten miles from MSP. Indeed, courts have frequently held that Minnesota is a central location for nationwide litigation. *See 3M Innovative Props. Co. v. InFocus Corp.*, No. 04-CV-0009, 2005 WL 361494, at *6 (D. Minn. Feb. 9, 2005) (finding that Minnesota is a "central location" for witnesses who hail from New York, Oregon, Ohio, Texas, and California). In sum, the District of Minnesota is the appropriate forum for this litigation because it "is a geographically central, metropolitan district equipped with the resources that this complex . . . litigation is likely to require." *In re Guidant Corp. Implantable Defibrillators Prod. Liability Litig.*, 398 F. Supp. 2d at 1372 (transferring cases pending in New York, California, Florida, and Indiana to Minnesota).

### C. The District of Minnesota Is an Experienced MDL District with Far Fewer Pending MDLs than the Southern District of New York

As the Panel has previously recognized, the District of Minnesota "possesses the necessary resources, facilities, and technology to sure-handedly devote the substantial time and effort to pretrial matters that [a] complex [MDL] docket is likely to require*." In re Baycol Prod. Liab. Litig.*, 180 F. Supp. 2d 1378, 1380 (J.P.M.L. 2001). The District of Minnesota has extensive experience managing complex antitrust litigation and is currently the forum for other food and agricultural antitrust MDLs. *See, e.g.*, *In re: Pork Antitrust Litig.*, MDL-2998; *In re: Cattle and Beef Antitrust Litig.*, MDL-3031.

The District of Minnesota also has the capacity to handle this litigation because it has fewer pending MDLs than the Southern District of New York. As of April 1, 2024, the District of Minnesota had only 5 pending MDLs.[10] By contrast, the Southern District of New York had

---

[9] *See* https://www.mspairport.com/flights-airlines/direct-route-map (last visited 4/3/2024).

[10] *See* https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-April-1-2024.pdf (last visited 4/3/2024).

11 pending MDLs.[11] As such, the District of Minnesota has the resources and capacity to handle another MDL, which weighs in favor of centralization. *In re Skelaxin (Metaxalone) Antitrust Litig.*, 856 F. Supp. 2d 1350, 1352 (J.P.M.L. 2012) (centralizing in the Eastern District of Tennessee, in part, because that district had only one other pending MDL); *In re Horizon Organic Milk Plus DHA Omega-3 Mktg. and Sales Practices Litig.*, 844 F. Supp. 2d 1380, 1381 (J.P.M.L. 2012) (centralizing in the Southern District of Florida because "[s]everal plaintiffs support centralization in the Southern District of Florida, and this district is presiding over fewer MDL dockets than other proposed districts."); *In re Baycol Prods. Liability Litig.*, 180 F. Supp. 2d at 1380 (centralizing in District of Minnesota, in part, because the district was not overtaxed with other MDL dockets).

In *In re Guidant Corp.*, the Panel centralized nationwide litigation in the District of Minnesota instead of other districts, including in New York, citing Minnesota's central geographic location and its capacity to manage an additional MDL. 398 F. Supp. 2d at 1372. The Panel should do the same here. *See also In re Corn Derivative Antitrust Litig.*, 486 F. Supp. 929, 932 (J.P.M.L. 1980) (selecting transferee district because it had relatively few multidistrict litigations).

Moreover, judicial economy weighs in favor of the District of Minnesota. The District of Minnesota has more favorable docket conditions and brings civil cases to trial quicker than the Southern District of New York (37 months versus 47 months, respectively).[12] The Panel frequently considers the relative docket conditions in evaluating transferee districts and favors districts with shorter median times to trial. *See In re Nat'l Student Mktg. Litig.*, 368 F. Supp. 1311, 1318 (J.P.M.L. 1972) ("Even more significantly, the median time interval from issue to

---

[11] *Id.*

[12] *See* FED. CT. MANAGEMENT STATISTICS, National Judicial Caseload Profile 11, 58 (June 30, 2023), https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2023.pdf. (last visited 4/3/2024).

trial in civil cases was eighteen months in the District of Columbia but twenty-seven months in the Southern District of New York."); *In re Corn Derivatives Antitrust Litig.*, 486 F. Supp. 929, 932 (J.P.M.L. 1980) (centralizing in the District of New Jersey because that district "has disposed of its cases quicker than the other three districts"); *In re Packaged Ice Antitrust Litig.*, 560 F. Supp. 2d 1359, 1361 (J.P.M.L. 2008) (selecting a transferee district with "favorable caseload conditions"); *In re Maxim Integrated Prods., Inc., Pat. Litig.*, 867 F. Supp. 2d 1333, 1336 (J.P.M.L. 2012) (selecting transferee district that had "favorable caseload conditions" and was "relatively geographically accessible"); *In re Apple*, 602 F.3d at 915 (8th Cir. 2010) (noting relevance of docket congestion in determining transferee district). *Cf. Anderson Trucking Servs.*, 2023 WL 1477635, at *5 (finding judicial economy weighed against transfer where average disposition time for civil matters was six months shorter in transferor district). For the efficient prosecution of the Actions, the Panel should consolidate and transfer the Actions to the District of Minnesota.

### D.  Judge Bryan Is Amply Qualified to Preside over the Actions

Judge Bryan, who is assigned all ten actions pending in the District of Minnesota, is a highly qualified jurist amply suited to preside over this complex antitrust litigation.  Judge Bryan has served as a judge in the District of Minnesota since 2023 and served as a judge in the Second Judicial District of Minnesota and the Minnesota Court of Appeals, from 2013 through 2019.[13] In private practice, Judge Bryan developed specific expertise in antitrust law and in prosecuting financial fraud.[14] Judge Bryan is therefore a highly qualified jurist to preside over this MDL. The fact that Judge Bryan does not have prior MDL experience as a judge should not prevent the Actions from being transferred to the District of Minnesota. *See, e.g.*, *In re*

---

[13]   *See* https://vettingroom.org/2023/08/15/judge-jeffrey-bryan/ (last visited 4/3/2024); https://www.judiciary.senate.gov/imo/media/doc/bryan_sjq.pdf (last visited 4/3/2024).

[14] *Id.*

*TransUnion Rental Screening Sol., Inc*., *FCRA Litig.*, 437 F. Supp. 3d 1377, 1378 (J.P.M.L. 2020) ("assign[ing] this litigation to an able jurist who has not yet had the opportunity to preside over an MDL."); *In re Sorin 3T Heater–Cooler Sys. Prods. Liab. Litig. No. II*, 289 F. Supp. 3d 1335, 1337 (J.P.M.L. 2018) (transferring cases to "an experienced jurist who has not had the opportunity to preside over an MDL").

### III.   CONCLUSION

The District of Minnesota is the most appropriate forum for centralization of the Actions because it has unique ties to the parties and the Granulated Sugar industry, it offers geographical and logistical convenience, and it possesses the judicial expertise and resources necessary to move this complex antitrust matter forward efficiently. For these reasons, the Minnesota Plaintiffs respectfully request that the Panel transfer the Actions for coordinated or consolidated pretrial proceedings to the District of Minnesota.

Dated: April 17, 2024                    Respectfully submitted,

| | |
|---|---|
| */s/ Kimberly A. Justice*<br>Kimberly A. Justice<br>**FREED KANNER LONDON & MILLEN LLC**<br>923 Fayette Street<br>Conshohocken, PA 19428<br>Telephone: (610) 234-6486<br>kjustice@fklmlaw.com<br><br>*Counsel for Plaintiffs WNT, LLC, WNT Farmington, LLC and Morelos Bakery LLC* | */s/ Heidi M. Silton*<br>Heidi M. Silton<br>**LOCKRIDGE GRINDAL NAUEN PLLP**<br>100 Washington Avenue South, Suite 2200<br>Minneapolis, MN 55401<br>Telephone: (612) 339-6900<br>hmsilton@locklaw.com<br><br>*Counsel for Plaintiffs WNT, LLC, WNT Farmington, LLC, Morelos Bakery LLC, and The Union Public House, LLC* |
| */s/ Kellie Lerner*<br>Kellie Lerner<br>**ROBINS KAPLAN LLP**<br>1325 Avenue of the Americas, Suite 2601<br>New York, NY 10019<br>Telephone: (212) 980-7400<br>klerner@robinskaplan.com<br><br>*Counsel for Plaintiffs WNT, LLC, WNT Farmington, LLC and Morelos Bakery LLC* | */s/ /David M. Cialkowski*<br>David M. Cialkowski<br>**ZIMMERMAN REED LLP**<br>1100 IDS Center<br>80 S. 8th St.<br>Minneapolis, MN 55402<br>Tel: (612) 341-0400<br>david.cialkowski@zimmreed.com<br><br>*Counsel for Plaintiff BW-SS, Inc.* |

| | |
|---|---|
| */s/ Jeffrey B. Gittleman*<br>Jeffrey B. Gittleman<br>**POGUST GOODHEAD LLC**<br>161 Washington Street, Suite 250<br>Conshohocken, PA 19428<br>Telephone: (610) 941-4204<br>jgittleman@pogustgoodhead.com<br><br>*Counsel for Plaintiff Boca Botana's Inc* | /s/ *David E. Kovel*<br>David E. Kovel<br>**KIRBY McINERNEY LLP**<br>250 Park Avenue, Suite 820<br>New York, NY 10177<br>Telephone: (212) 371-6600<br>dkovel@kmllp.com<br><br>*Counsel for Plaintiff King Kullen Grocery Co., Inc.* |
| */s/ Bobby Pouya*<br>Bobby Pouya<br>**PEARSON WARSHAW, LLP**<br>15165 Ventura Blvd., Suite 400<br>Sherman Oaks, CA 91403<br>Telephone: (818) 788-8300<br>bpouya@pwfirm.com<br><br>*Counsel for Plaintiff Raleigh Golden* | */s/ Stuart G. Gross*<br>Stuart G. Gross<br>**GROSS KLEIN PC**<br>The Embarcadero<br>Pier 9, Suite 100<br>San Francisco, CA 94111<br>Telephone: (415) 671-4628<br>sgross@grosskleinlaw.com<br><br>*Counsel for Plaintiff Piala LLC* |

BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| IN RE: GRANULATED SUGAR ANTITRUST LITIGATION | MDL No. 3110 |
|---|---|

# EXHIBIT A – SCHEDULE OF ACTIONS

### Direct Purchaser Complaints

|  | Caption | District Court | Civil Action No. | Date Filed |
|---|---|---|---|---|
| 1. | *KPH Healthcare Servs, Inc. v. ASR Group Int'l, Inc., et al.* | S.D.N.Y. | 1:24-cv-01941 | 3/14/2024 |
| 2. | *Redner's Markets, Inc. v. ASR Group Int'l, Inc., et al.* | S.D.N.Y. | 1:24-cv-01968 | 3/15/2024 |
| 3. | *C.A. Curtze Co. v. ASR Group Int'l, Inc., et al.* | S.D.N.Y. | 1:24-cv-02352 | 3/28/2024 |

### Commercial Indirect Purchaser Complaints

|  | Caption | District Court | Civil Action No. | Date Filed |
|---|---|---|---|---|
| 1. | *WNT, LLC and WNT Farmington, LLC v. American Sugar Refining, Inc., et al.* ("WNT") | D. Minn. | 0:24-cv-00959 | 3/18/2024 |
| 2. | *Morelos Bakery LLC v. United Sugar Producers & Refiners Coop. f/k/a United Sugars Corp., et al.* ("Morelos Bakery") | D. Minn. | 0:24-cv-00966 | 3/19/2024 |
| 3. | *Up at 4, Inc., d/b/a Great Harvest Bread Co. v. ASR Group Int'l, Inc., et al.* ("Up at 4") | D. Minn. | 0:24-cv-00970 | 3/19/2024 |
| 4. | *Quarterback Club and Gladys' Rest., LLC d/b/a Gladys' v. ASR Group Int'l, Inc., et al.* ("Quarterback Club") | D. Minn | 0:24-cv-01017 | 3/21/2024 |
| 5. | *BW-SS, Inc. v. ASR Group Int'l, Inc., et al.* ("BW-SS") | D. Minn. | 0:24-cv-01017 | 3/22/2024 |
| 6. | *Golden Goose Markets, Inc. v. ASR Group Int'l, Inc., et al.* | S.D.N.Y. | 1:24-cv-02159 | 3/22/2024 |
| 7. | *Boca Botana's Inc v. United Sugar Producers & Refiners Coop., et al.* ("Boca Botana's") | D. Minn. | 0:24-cv-01106 | 3/29/2024 |
| 8. | *King Kullen Grocery Co., Inc. v. ASR Group Int'l, Inc., et al.* ("King Kullen") | D. Minn. | 0:24-cv-01122 | 4/2/2024 |

|     | Caption | District Court | Civil Action No. | Date Filed |
|-----|---------|----------------|------------------|------------|
| 9.  | *Piala LLC v. United Sugar Producers & Refiners Coop., et al.* ("*Piala*") | D. Minn. | 0:24-cv-01232 | 4/8/2024 |
| 10. | *The Union Public House, LLC v. American Sugar Refining, Inc., et al* ("*Union Public House*") | D. Minn. | 0:24-cv-01292 | 4/11/2024 |

**Consumer Indirect Purchaser Complaints**

|     | Caption | District Court | Civil Action No. | Date Filed |
|-----|---------|----------------|------------------|------------|
| 1.  | *Fowler, et al. v. ASR Group Int'l, Inc., et al.* | S.D.N.Y. | 1:24-cv-01972 | 3/15/2024 |
| 2.  | *Raleigh Golden v. United Sugar Producers & Refiners f/k/a United Sugars Corp., et al.* ("*Raleigh Golden*") | D. Minn. | 0:24-cv-01129 | 4/2/2024 |
| 3.  | *Edlin v. ASR Group Int'l, Inc., et al.* | S.D. Fla. | 9:24-cv-80442 | 4/10/2024 |
| 4.  | *Humphreys v. ASR Group Int'l, Inc., et al.* ("*Humphreys*") | S.D. Fla. | 9:24-cv-80451 | 4/11/2024 |